# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4347

_____

| | |
|---|---|
| Ruben Gonzales, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Western District of Missouri. |
| Jo Anne B. Barnhart, Commissioner | * |
| of the Social Security Administration, | * |
| | * |
| Appellant. | * |

_____

Submitted: May 19, 2006
Filed: October 23, 2006

_____

Before WOLLMAN, BOWMAN, and RILEY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The Commissioner of Social Security (Commissioner) appeals an order of the District Court reversing the decision of an administrative law judge (ALJ) to affirm the Commissioner's denial of disability insurance (SSDI) and supplemental security income (SSI) benefits to Ruben Gonzales. The Commissioner argues that substantial evidence supports the ALJ's decision to deny benefits. We reverse and remand with instructions to reinstate the Commissioner's denial of benefits.

At the end of his work shift on December 9, 2002, Gonzales, a then thirty-seven-year old with an eleventh-grade education, began suffering back pain but

reported no specific injury to his employer. Gonzales was employed at the time as an order picker, and he had been employed in the past as a security guard, delivery truck driver, material handler, hoisting laborer, production welder, plastic roller, and septic tank installer.

Charles C. Mauldin, M.D., a specialist in physical medicine, examined Gonzales on December 11, 2002. Mauldin diagnosed Gonzales with low back pain, prescribed pain medication, and recommended that Gonzales undergo physical therapy. Gonzales attended physical therapy sessions over a two-week period. After Gonzales completed these sessions, the physical therapist (PT) noted that Gonzales had "some movement restrictions" of his lumbar spine and right hip, and "limitation of motion on forward bending, right rotation, and left side bending," but that he had "no difficulty in getting on and off the examination table." Admin. R. at 174. Gonzales's score on the McGill Pain Questionnaire administered by the PT "indicat[ed] an emotional component to [Gonzales's] pain complaint," although Gonzales "denied any emotional burden." Id. at 211.

While he attended physical therapy sessions, Gonzales continued to see Mauldin and continued to complain of back pain. On December 19, 2002, Mauldin ordered an MRI of Gonzales's spine, which revealed that Gonzales had moderate stenosis at L2-3 and L3-4 and mild stenosis at L4-5. In his notes, Mauldin described these results as evidence of diffuse degenerative changes to Gonzales's back. Gonzales continued to complain of back pain to Mauldin despite pain medication and physical therapy, and on January 7, 2003, Maudlin administered an epidural steroid injection. Gonzales reported that this injection provided some relief, but only for two days. Consequently, on January 22, 2003, Mauldin prescribed facet joint injections. Gonzales reported that these injections only increased his back pain. Gonzales next saw Mauldin on January 29, 2003, at which time Mauldin noted that Gonzales "move[d] freely" with a "normal gait" and that Gonzales's complaints of pain were accompanied by "nonorganic signs." Id. at 223. Believing that sufficient time had

elapsed for any injury Gonzales may have suffered to have healed, Mauldin recommended that Gonzales "exercise," as that "would be the treatment most likely to bring about benefit." Id. at 211.

At Gonzales's next appointment on February 12, 2003, Mauldin noted that Gonzales "[g]rimace[d] and sigh[ed] constantly" during the examination, id. at 221, and that Gonzales "ambulate[d] without a limp as he [left] the room, but limp[ed] and walk[ed] very slowly while . . . in the examination room," id. at 212. Mauldin referred Gonzales for work-conditioning therapy. In connection with his initial work-conditioning-therapy assessment, Gonzales was seen by an occupational therapist (OT), who had Gonzales complete an Oswestry Pain Questionnaire. Gonzales's score on the Oswestry test indicated that he had a "crippled perception" of his disability. Id. at 191. The OT noted that although Gonzales grimaced and expressed discomfort during the assessment process, his movement patterns improved when he was distracted, a result indicating a "nonorganic sign . . . that the client has attempted to control the test results." Id. at 195. In a progress report summarizing Gonzales's four treatment sessions, the OT stated that Gonzales continued to rate his pain as "very high at all times (7 to 10 on a 0 to 10+ scale)," but had the ability to "transition from sit to stand" and to squat, bend, and stand without difficulty. Id. at 187. The OT specifically observed that when Gonzales arrived for his initial assessment, his hands were calloused, with "dirt in the crevices." Id. at 193.

On February 13, 2003, Mauldin noted that results from an EMG conducted the day before were normal. Mauldin also noted that Gonzales moved well getting on and off the examination table and that he put on his trousers while standing, bent horizontally from the waist, and walked normally. Nevertheless, because Gonzales continued to complain of pain, Mauldin sought a surgical opinion from Fred McQueary, M.D. Based on results from an MRI, McQueary diagnosed Gonzales with degenerative disc changes, recommended conservative treatment, and opined that Gonzales would not be capable of returning to "the heavy sorts of labor" required at

his former place of employment. Id. at 206. McQueary did not, however, recommend surgical intervention.

At an appointment with Mauldin on February 17, 2003, Gonzales complained of worsening back pain and numbness in his legs and, according to Mauldin, sighed, grimaced, and groaned frequently during the examination. Mauldin "explained to [Gonzales] that worsening [pain] while off work or with light activity is not consistent with physical injury [two months] ago" and again noted that Gonzales displayed "nonorganic signs" in connection with his complaints of pain. Id. at 216.

On February 25, 2003, Gonzales saw Mauldin for the last time. Mauldin's final diagnosis was "[c]omplaints of low back pain with evidence of dissimulation," and "[p]ermanent partial impairment of 5% of the body as a whole." Id. at 213. In his final medical evaluation, Mauldin concluded that Gonzales had "reached maximum medical improvement for his alleged work injury and will require no further medical care for it. There is no objective evidence of injury." Id. Mauldin released Gonzales to return to work, but recommended limitations on Gonzales's work activities because of the degenerative disc changes shown in his MRI. In a report to Gonzales's employer, Mauldin stated that Gonzales could frequently lift, push, or pull twenty pounds, and could occasionally lift fifty pounds. Id. at 215.

On April 3, 2003, Gonzales consulted Michael Ball, D.O., a family practitioner, who diagnosed Gonzales with chronic lumbar pain extending into the right leg, prescribed pain medication, and concluded that Gonzales could lift ten pounds regularly and twenty pounds occasionally. Gonzales saw Ball several times, at one point appearing in Ball's office in June 2003 to complain of increased back pain after washing the car. On June 3, 2004, David Stone, M.D., treated Gonzales after

Gonzales twisted his back "playing ball."[1]  Id. at 263.  When Stone saw Gonzales on June 17, 2004, he noted that Gonzales exhibited "some possible symptom magnification."  Id. at 262.  Stone requested an MRI, which revealed no significant change in Gonzales's diagnosis since the earlier MRI conducted in 2002.

Gonzales filed applications for SSDI and SSI benefits on March 18, 2003, claiming complete disability since December 9, 2002, as a result of chronic back pain. The Commissioner denied the application, and Gonzales requested a hearing before an ALJ.  At a hearing on August 9, 2004, Gonzales submitted his medical records and testified in response to questions by his attorney and by the ALJ.  Gonzales testified that after his back pain began, his employer terminated his employment because he was unable to perform his work duties.  Gonzales also testified that he had been living with relatives since December 2002 and did little around the house other than help wash dishes.  He stated that he was unable to sit or stand more than thirty minutes without a change of position and was unable to lift, bend, or twist.  Medications lowered his pain level to a 6 from an 8–9 on a 0–10 scale, but the medications caused drowsiness, weakness, and dizziness.

In addition to Gonzales's testimony, the ALJ elicited testimony from a vocational expert (VE).  The ALJ asked the VE to consider whether an individual with limitations as described by Ball could perform Gonzales's past work.  Specifically, the ALJ asked the VE to consider a thirty-eight-year-old individual (Gonzales's age at the time of the hearing) who (1) could frequently lift and carry ten pounds; (2) could occasionally lift and carry twenty pounds; (3) could stand, walk, or sit for thirty minutes continuously in an eight-hour day; (4) was limited in using foot controls; (5) could not climb, stoop, crouch, or crawl, but could occasionally balance and kneel and frequently reach and handle; (6) had no manipulative limitations; and (7) must avoid

[1]At his hearing before the ALJ on August 9, 2004, less than two months after seeing Stone, Gonzales testified that his back pain was so severe he could not "get outside and play catch" with his two sons.  Admin. R. at 76.

exposure to dust, fumes, or vibration. According to the VE, an individual with these limitations could not perform Gonzales's past relevant work.

After the August 9, 2004, hearing, the ALJ sent the VE post-hearing interrogatories based on Mauldin's medical opinion.[2] Specifically, the ALJ asked the VE to consider an individual of Gonzales's age who could (1) lift fifty pounds occasionally, (2) lift twenty pounds frequently, and (3) push and pull twenty pounds frequently. The VE responded that with the exception of material handler, an individual with these limitations would be capable of performing all of Gonzales's past relevant work, including truck driver, hoisting laborer, production welder, plastic roller, septic tank installer, and order picker—the job Gonzales held when he first complained of back pain. In addition, the VE stated that such an individual could perform the jobs of hotel porter, kitchen helper, laundry worker, and car porter.

Based on the medical evidence, the hearing testimony, and the post-hearing interrogatories, the ALJ concluded that the Commissioner properly denied Gonzales's applications for SSDI and SSI benefits. Gonzales then filed a complaint in the District Court, asserting that the ALJ's credibility determination was improper and that the ALJ's finding regarding Gonzales's residual functional capacity (RFC) was not supported by the medical evidence. The District Court reversed the ALJ, concluding "that the ALJ's decision is not supported by the record in this case and fails to take into consideration [Gonzales's] testimony regarding his limitations as well as the overwhelming evidence indicating that [Gonzales] is disabled." Order of Sept. 26, 2005, at 5. The District Court directed the Commissioner to award SSDI and SSI benefits to Gonzales. The Commissioner now appeals.

---

[2]Although the ALJ did not specifically reference Mauldin's medical opinion, the post-hearing interrogatories posed by the ALJ to the VE incorporate work limitations identical to those recommended by Mauldin in his final medical report releasing Gonzales to return to work.

We review de novo the District Court's determination of whether substantial evidence on the record as a whole supports the ALJ's decision. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision. See Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005). In our review, we consider the evidence that supports the ALJ's decision, as well as the evidence that detracts from it, and we will uphold the ALJ's decision if it is supported by substantial evidence on the record as a whole even if more than one conclusion could be drawn from the evidence. See id. "We do not reweigh the evidence presented to the ALJ," Baldwin v. Barnhart, 349 F.3d 549, 555 (8th Cir. 2003), and we defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence, see Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).

In determining whether a claimant is entitled to disability benefits, the Commissioner performs a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC[3] to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts

_____

[3]"Residual functional capacity" is defined as "the most [a claimant] can still do" despite the "physical and mental limitations that affect what [the claimant] can do in a work setting" and is assessed based on all "medically determinable impairments," including those not found to be "severe." 20 C.F.R. §§ 404.1545, 416.945.

to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform. See id. §§ 404.1520, 416.920.

The ALJ found that Gonzales had carried his burden at steps one and two of the analysis: Gonzales had not engaged in substantial gainful activity since the December 9, 2002, onset of his back pain, and he had a severe impairment. At step three of the analysis, however, the ALJ concluded—and Gonzales conceded—that the impairment did not meet or equal any of the listings for disability. The ALJ then proceeded to assess Gonzales's RFC as required by step four of the disability analysis. Evaluating Gonzales's claims that he was unable to engage in his past relevant work, the ALJ found that Gonzales "was frequently and consistently observed to engage in malingering behavior," that his complaints of pain were not supported by objective medical evidence, and that Gonzales's "allegations regarding his limitations [were] not totally credible." Decision of Sept. 30, 2004, at 4, 7. The ALJ stated that the adverse credibility finding was based not only on the medical evidence, but on Gonzales's demeanor at the hearing, his erratic work history, and his failure to pursue vocational-training or educational opportunities. Additionally, the ALJ observed that Gonzales had not been prescribed an assistive device, such as a back brace, nor was he referred to a pain management clinic or prescribed more aggressive medical treatment to alleviate his allegedly debilitating back pain. The Commissioner argues that the ALJ's adverse credibility finding is supported by substantial evidence in the record as a whole and that the District Court erred in rejecting this finding.

A disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a whole bring those complaints into question. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). In assessing the credibility of a claimant's subjective pain complaints, an ALJ is to consider factors including the claimant's prior work record; the claimant's daily activities; observations of the claimant by third parties and treating and examining physicians; the duration, frequency, and intensity of the claimant's pain; precipitating and aggravating factors;

the dosage, effectiveness, and side effects of the claimant's medication; treatment, other than medication, for relief of the claimant's pain; and functional restrictions on the claimant's activities. See id. Although "an ALJ may not disregard [a claimant's] subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a [c]laimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002) (internal citation omitted); see also Goodale v. Halter, 257 F.3d 771, 774 (8th Cir. 2001) (noting that an ALJ may discount subjective complaints if there are inconsistencies in the evidence as a whole), cert. denied, 535 U.S. 908 (2002).

In this case, the ALJ discredited Gonzales's subjective complaints of pain after considering all the evidence in the record. Applying the Polaski factors described above, the ALJ specifically described the evidence supporting the adverse credibility determination. Mauldin, Stone, the PT, and the OT each noted that Gonzales was exhibiting signs of symptom exaggeration. Each of these medical professionals observed that Gonzales frequently and consistently displayed malingering behavior. Results of various tests were inconsistent with Gonzales's complaints of debilitating pain. Mauldin, the OT, and the PT each observed improvements in Gonzales's gait and mobility when he was distracted or when he was outside of the examination room. Gonzales presented an erratic work history, which included multiple jobs held for only very short periods of time. The medical records and opinions revealed that Gonzales washed his car, played ball, and appeared for a therapy session with calloused and dirty hands, even while he was complaining of debilitating back pain. Gonzales was not prescribed and did not pursue alternative treatments to alleviate his back pain, such as surgical intervention or even a back brace or ambulatory assistance device.

"We 'will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain.'" Goff, 421 F.3d at 792 (quoting Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001)); see also Pearsall v.

-9-

<u>Massanari</u>, 274 F.3d 1211, 1218 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."). In this case, the ALJ considered Gonzales's subjective complaints of pain but found independent reasons, each supported by substantial evidence, to discredit those complaints. Accordingly, we conclude that the ALJ properly discredited Gonzales's subjective complaints of pain.

After determining that Gonzales's subjective complaints of pain were not credible, the ALJ found that Gonzales retained the capacity to lift fifty pounds occasionally and to push, pull, and lift twenty pounds frequently. These conclusions coincide with the medical opinion expressed by Mauldin, a physical medicine specialist who treated Gonzales numerous times over the months immediately following Gonzales's initial complaints of back pain. The ALJ adopted an RFC that reflected Mauldin's, rather than Ball's, opinion of Gonzales's capabilities because, according to the ALJ, Ball's opinion appeared to be based solely on Gonzales's subjective complaints of back pain and it contradicted the medical evidence as a whole. The ALJ noted specifically that on June 24, 2003, Ball reported "that [Gonzales] had increased pain after washing his car, and yet signed a Medical Source Statement on the very next day in which he opined that [Gonzales] was virtually bedfast." Decision of Sept. 30, 2004, at 4–5. The ALJ considered evidence of Gonzales's daily activities—including notes in medical charts that Gonzales was washing his car and playing ball—in discounting Ball's medical opinion that Gonzales was disabled. Moreover, the ALJ described additional evidence in the record contradicting Ball's assessment, namely, observations by Mauldin, Stone, the PT, and the OT that Gonzales appeared to be exaggerating his symptoms.

An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1013 (8th Cir.

2000) (internal quotations and citations omitted). Considering the record as a whole, we conclude that substantial evidence supports the ALJ's decision to rely on Mauldin's assessment that Gonzales retained the RFC to perform his past relevant work as it is usually performed.

In sum, we conclude that substantial evidence supports the ALJ's conclusion that Gonzales is not disabled. Because we hold that the ALJ's decision denying benefits is supported by substantial evidence, we need not address the Commissioner's contention that the District Court should have remanded the case for further proceedings before the ALJ, rather than directly awarding benefits. Accordingly, we reverse the District Court's order and remand the case with instructions to reinstate the Commissioner's denial of benefits.

_____