# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3788

_____

Lester Hines,                *
                                    *
          Appellant,        *
                                    *    Appeal from the United States
    v.                        *    District Court for the Western
                                    *    District of Missouri.
Michael J. Astrue, Commissioner    *
of Social Security,             *         [UNPUBLISHED]
                                    *
          Appellee.         *

_____

Submitted: December 12, 2008
Filed: March 25, 2009

_____

Before LOKEN, Chief Judge, BEAM, Circuit Judge, and KYLE, District Judge.[1]

_____

PER CURIAM.

Lester Hines applied for disability insurance benefits on October 30, 2003, alleging a disability onset date of October 22, 2002, for physical and mental ailments. Hines's claim for benefits has been denied at every stage to date. For the reasons stated herein, we affirm the decision of the district court.[2]

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

# I.    BACKGROUND

Hines applied for disability benefits alleging he was disabled due to problems with his heart, back, and knee.  During the hearing before the Administrative Law Judge (ALJ), Hines introduced evidence from consulting experts, Drs. John Keough and Louis Bein, relating to Hines's mental condition.  The ALJ denied Hines benefits because his condition failed to meet a listed impairment and because he could perform other work in the national economy despite not being able to return to his past employment.  Hines does not dispute the ALJ's findings regarding his physical condition.  Instead, Hines focuses his appeal on the ALJ's decision to discredit his IQ score and the ALJ's determination that Hines does not meet the listed impairment in 12.05C addressing mental retardation.  As such, our decision is similarly limited.

Dr. Keough, the first of two consulting psychologists, examined Hines on September 27, 2005.  During the examination, Hines stated that he was in a car accident while in the ninth grade, and dropped out of high school as a result of injuries suffered in the accident.  Hines did not indicate difficulties in school before dropping out, and stated he had no history of mental health treatment.  Although Dr. Keough noted that Hines was "somewhat reluctant to cooperate" and "appeared to interact with the consultant in a superficial manner," he was able to determine that Hines's verbal and social judgment skills were "quite lacking."  And while Hines's memory was found "to be adequate," Dr. Keough concluded that Hines's capacity to understand and remember instructions was "mildly impaired by learning disabilities and a history of alcohol abuse [and he] appear[ed] [to] be experiencing a mild to moderate level of impairment with regard to his ability in sustaining concentration, being persistent in tasks, and maintaining an adequate pace in productive activity."

Hines was then examined by Dr. Bein on November 2, 2005.  Dr. Bein noted, among other things, that Hines "was well oriented . . . did not appear to have any difficulty understanding [ ] questions or the directions for the examination . . . [and

h]is attention/concentration was adequate."  During the examination, Hines stated "he received special assistance in reading and spelling" while in school, but does not appear to have elaborated further.  An IQ test showed Hines had a verbal score of 66, a performance score of 75, and a full scale score of 67.  The full scale score fell in the mild mental retardation range, and Hines showed weakness in verbal comprehension.  The performance score fell in the "borderline range of intelligence," and Hines showed "relative strengths" in "the perceptual organization index . . . and the working memory index."  Dr. Bein concluded by noting that tests suggest organic brain damage and a "main weakness [] in verbal comprehension."

Other than Drs. Keough's and Bein's testimony, little evidence addressed Hines's mental condition; rather, most of the evidence focused on his physical condition.  As to evidence of his daily living activities, Hines testified that he cooked occasionally, but at one point had caused a fire in the kitchen.  Additionally, he claimed that he had problems completing the Social Security forms, and needed his mother's assistance to complete them.  Finally, Hines stated that even though he can read and write, he has difficulty doing so, especially with regard to remembering what he read.

After considering the evidence, the ALJ concluded he would give less weight to Dr. Bein's assessment that Hines suffered from mild mental retardation because that assessment was inconsistent with the record.  First, Dr. Bein's conclusion "did not recognize [Hines's] prior work history, which included semi-skilled work as a material handler."  Also, the ALJ noted that "the fact that [Hines] has not sought or received mental health treatment for any cognitive deficits and his ability to understand and follow what took place at the hearing undermine Dr. Bein's assessment of mild mental retardation."  Thus, Hines failed to satisfy listing requirement 12.05C.  Hines petitioned the Appeals Council for review of the ALJ's decision, but the Council denied the petition.  The district court also affirmed the ALJ's decision.  This appeal followed.

## II.    DISCUSSION

We review the district court's decision de novo and the ALJ's decision with deference. Johnson v. Barnhart, 390 F.3d 1067, 1069 (8th Cir. 2004). The ALJ's decision must be affirmed if "supported by substantial evidence in the record as a whole." Id. at 1070. "Substantial evidence is evidence that a reasonable mind would find adequate to support a decision, considering both evidence that detracts from and evidence that supports the [ ] decision." Id. We will not reverse a decision, even if some evidence supports a conclusion contrary to that reached by the ALJ, if it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings." Id.

To determine whether a claimant is disabled, an ALJ must apply the sequential analysis outlined in 20 C.F.R. § 416.920. Christner v. Astrue, 498 F.3d 790, 792 (8th Cir. 2007). First, "the claimant must establish that he has not engaged in substantial gainful activity." Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006). Next, the claimant must show "he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities." Id. If the claimant shows the impairment "meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits." Id. If the impairment does not meet or equal those listed in the regulations, the claimant must show "he lacks the [residual functional capacity (RFC)] to perform his past relevant work." Id. If the claimant shows a lack of RFC, "the burden shifts to the Commissioner . . . to prove that there are other jobs in the national economy that the claimant can perform." Id.

In this case, the ALJ acknowledged that Hines had not engaged in substantial gainful activity, but found that his severe impairments did not "reach the level of severity" listed in the regulations. In doing so, the ALJ noted Dr. Bein's findings that Hines had a verbal scale IQ of 66, a performance scale IQ of 75, and a full scale IQ

of 67, and, therefore, suffered from mild mental retardation. However, the ALJ rejected Dr. Bein's assessment in lieu of Dr. Keough's because Hines neither sought nor received mental health treatment, he could understand and follow the current proceedings, and his past work experience was inconsistent with mild mental retardation. The ALJ went on to find Hines lacked the RFC to perform his past work, but that he could "perform other work that exists in significant numbers in the national economy." Thus, Hines was not disabled.

On appeal, Hines alleges the ALJ erred in finding his disability did not reach the level of severity listed in the regulations. Specifically, Hines suggests he satisfied listing requirement 12.05C in 20 C.F.R. § 404, appendix 1, and is mentally retarded. Hines claims his IQ meets the quantitative requirements of 12.05C, the onset of his impairment occurred before age 22, and that he has an additional physical impairment that limits his ability to perform basic work activities, which are all prerequisites for obtaining disability benefits. We disagree.

Listing 12.05 allows a person suffering from mental retardation to receive disability benefits when one of four conditions are met. Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006). Hines claims he satisfied the Subpart C condition, which requires a claimant to show: "(1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. An ALJ, however, "is not required to accept a claimant's IQ scores . . . and may reject scores that are inconsistent with the record." Miles v. Barnhart, 374 F.3d 694, 699 (8th Cir. 2004). In fact, IQ scores "should be examined to assure consistency with daily activities and behavior." Id. Our inquiry, therefore, is whether the ALJ's decision to discredit Hines's scores "is supported by substantial evidence on the record as a whole. If we find such evidence, we must affirm." Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998).

The ALJ did not err in discrediting Hines's IQ scores as there is substantial evidence in the record to support this decision. First, the ALJ noted that Hines's prior occupation was a semi-skilled job–a job inconsistent with mental retardation. Second, the ALJ found Hines's demeanor at the hearing inconsistent with a finding of retardation. See Miles, 374 F.3d at 699 (holding the ALJ did not err "in relying, in part, [] on his observation of [claimant] at the hearing in discounting the IQ score"). Finally, the ALJ pointed out that Hines "has not sought or received mental health treatment for any cognitive deficits." Indeed, this IQ test stands alone in the record as quantitative evidence of mental retardation. See Clark, 141 F.3d at 1256 ("one-time evaluation by a non-treating psychologist is not entitled to controlling weight"). It is also persuasive that prior to Dr. Bein's assessment, Hines neither claimed to suffer from nor was ever suspected of suffering from mental retardation, despite an extensive history of seeking disability benefits beginning in the mid-1990s. See id. ("[n]othing in [claimant's] extensive medical records indicates that [he] was ever suspected of being mildly mentally retarded").

Hines points to his lack of education, alleged need for special assistance while in school, and difficulty reading as evidence supporting Dr. Bein's assessment of mild mental retardation. While Hines did drop out of school around the ninth grade, his departure appears to have resulted from an injury where he almost lost his right arm, as opposed to any suggestion of academic inability. And while Hines may have difficulty reading, he acknowledged that he can read and write. Further, Hines does not appear to be limited in performing most daily functions as a result of mental retardation. He obtained a driver's license and is able to pay bills, manage a checking account and checkbook, and complete money orders. See Clark, 141 F.3d at 1256. Finally, it does not appear from the record that Hines ever lost a job for lack of cognitive ability. See Miles, 374 F.3d at 699 (claimant was not terminated for lack of mental abilities).

Moreover, even if we view Hines's uncorroborated, self-serving declarations of receiving special assistance while in school and of having difficulty reading as evidence supporting a conclusion contrary to that reached by the ALJ, there is also myriad evidence in the record which supports the ALJ's decision. Thus, when faced with two inconsistent positions, one of which represents the ALJ's findings, we will not reverse the ALJ's decision.[3]

## III.  CONCLUSION

For the foregoing reasons, we affirm.

_____

[3]Much is said in the briefs about the district court's consideration of Hines's history of substance abuse, and its affect on Hines's mental condition. The ALJ, however, noted that Hines "is not being found disabled so the materiality of substance abuse does not need to be addressed." Thus, because Hines's substance abuse was not a controlling factor in the ALJ's decision, we need not consider it and any effects it may have had on Hines's current mental status.