# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3041
_____

Katherine Johnson

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Helena

_____

Submitted: April 14, 2015
Filed: June 11, 2015

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

Katherine Johnson appeals after the district court[1] affirmed the Social Security Administration's (SSA) denial of Johnson's application for supplemental security

---

[1]The Honorable H. David Young, United States Magistrate Judge for the Eastern District of Arkansas, sitting with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73(a).

income (SSI).  See 42 U.S.C. § 1381 et seq.  Because there is substantial evidence supporting the administrative law judge's (ALJ) conclusion that Johnson was not disabled under the Social Security Act, see id. § 1382c, we affirm.[2]

## I.    BACKGROUND

Johnson suffers from a number of severe impairments, including chronic asthma, morbid obesity, borderline intellectual functioning, depression, anxiety, and post-traumatic stress disorder.  Most relevant to this appeal is whether Johnson has an intellectual disability, as defined by the SSA.  See 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05.[3]

At the request of the SSA, Charles M. Spellmann, Ph.D., examined Johnson on May 25, 2010.  After conducting a series of cognitive tests, Dr. Spellmann reported Johnson was not "functioning within or near the mentally retarded range."  He observed Johnson could "sustain concentration and persistence in completing tasks" and "cope with the cognitive demands of work like tasks," and any of Johnson's "[m]ental impairments d[id] not significantly interfere with her day to day adaptive functioning."

To determine Johnson's eligibility for Vocational Rehabilitation Services, Michael Nicholas, Ph.D., conducted a psychological evaluation of Johnson on July 12, 2010.  Dr. Nicholas performed a series of cognitive tests, including the Wechsler

---

[2]We possess appellate jurisdiction under 28 U.S.C. § 1291.

[3]In 2013, the SSA replaced the term "mental retardation" with "intellectual disability."  See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (August 1, 2013).  Both terms "describe the identical phenomenon," and the change in nomenclature has been approved by Congress and members of the psychiatric profession.  Hall v. Florida, 572 U.S. ___, ___, 134 S. Ct. 1986, 1990 (2014); see also Rosa's Law, Pub. L. No. 111-256, 124 Stat. 2643 (2010).

Adult Intelligence Scale-Fourth Edition intelligence quotient (IQ) test. Dr. Nicholas concluded Johnson had a verbal comprehension IQ of 61, a perceptual reasoning IQ of 79, a working memory IQ of 66, a processing speed IQ of 81, and a full scale IQ of 67. "Based on these scores," Dr. Nicholas decided "a Mild Mental Retardation diagnosis [wa]s warranted." Even so, Dr. Nicholas observed that Johnson's "thought process and content [were] clear and coherent," and "[h]er concentration and attention were intact." Dr. Nicholas suggested Johnson "be encouraged to find employment in an occupation that is mechanical in nature, as she showed strength on tasks that require ability to analyze and synthesize abstract stimuli."

Between June 2010 and February 2011, Johnson occasionally attended counseling. Johnson's counselors estimated she was of "low average" intelligence and education, and diagnosed her as having "borderline intellectual functioning."

In February 2010, Johnson applied for SSI. After being denied benefits at the initial and reconsideration stages, an ALJ heard Johnson's case on September 17, 2012. Before the ALJ, Johnson testified she had attended some special education classes in school; struggled with algebra, "some reading," and history; and ultimately dropped out of school after completing the ninth grade because she started having children. Johnson also explained she can write and "can read a little," yet has never worked and does not have a driver's license. Johnson can take the bus, goes to the store, visits relatives, can count change, does housework weekly, cooks "complete meals with several courses" for her son, and "can follow a recipe word for word."

Applying the "five-step sequential process [used] for evaluating disability claims," Hill v. Colvin, 753 F.3d 798, 800 (8th Cir. 2014), the ALJ found Johnson had a number of severe impairments, including "borderline intellectual functioning," but believed these impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. Pt. 404, subpt. P, app. 1, including Listing 12.05C. The ALJ denied benefits because she determined Johnson had "the residual functional

capacity to perform light work" with some restrictions and, based on the testimony of a vocational expert, there were ample jobs in the market that a person with Johnson's restrictions could perform. The Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner, see, e.g., Lott v. Colvin, 772 F.3d 546, 548 (8th Cir. 2014), and the district court affirmed. Johnson now appeals to this court, arguing only that the ALJ erred in finding Johnson "did not show significant subaverage intellectual functioning prior to age 22 and current deficits in adaptive functioning."

## II.    DISCUSSION

"This court reviews *de novo* a district court's denial of social security benefits." Maresh v. Barnhart, 438 F.3d 897, 898 (8th Cir. 2006). In evaluating the denial of SSI, "'[w]e do not reweigh the evidence presented to the ALJ,' and we defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006) (quoting Baldwin v. Barnhart, 349 F.3d 549, 555 (8th Cir. 2003)). "'Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001) (quoting Black v. Apfel, 143 F.3d 383, 385 (8th Cir. 1998)).

To meet the listed impairment for intellectual disability, Listing 12.05C requires:

> [S]ignificantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22 [and]
>
> . . . .

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05C. "Th[e]se requirements clearly include demonstrating that the claimant suffered 'deficits in adaptive functioning' and that those deficits 'initially manifest during the developmental period [before age 22].'" Cheatum v. Astrue, 388 F. App'x 574, 576 (8th Cir. 2010) (unpublished per curiam) (second alteration in original) (quoting 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05).

Substantial evidence supports the ALJ's determination that Johnson does not have deficits in adaptive functioning sufficient to meet Listing 12.05C. Johnson can read, write, and count change; can care for herself and her youngest son, whom she raised from infancy; and can perform most household tasks. These activities are not consistent with the deficits in adaptive functioning contemplated by Listing 12.05C. See Cheatum, 388 F. App'x at 576-77 (concluding a petitioner diagnosed with borderline intellectual functioning who could do light housework, prepare meals, and care for her ailing parents did not have deficits in adaptive functioning); cf. Clark v. Apfel, 141 F.3d 1253, 1256 (8th Cir. 1998) ("Clark is not significantly restricted in her daily activities . . . . She is able to read and to write and to count money[;] . . . does the majority of the cooking, cleaning, and shopping for her household[; and] is the primary caretaker for her young daughter."). Although Dr. Nicholas found Johnson had a full scale IQ of 67 and diagnosed her with "mild mental retardation," he noted Johnson's concentration and thought process were normal, and Dr. Nicholas suggested Johnson "be encouraged to find employment . . . mechanical in nature, as she showed strength on tasks that require ability to analyze and synthesize abstract stimuli." Dr. Spellmann specifically noted Johnson's "[m]ental impairments do not significantly interfere with her day to day adaptive functioning." One of Johnson's counselors observed her to be of "low average" intelligence, and two counselors diagnosed her with "borderline intellectual functioning."

-5-

While some evidence may suggest Johnson has some level of intellectual disability, "[t]he mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner does not allow this Court to reverse the decision of the ALJ." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the decision of the Commissioner." Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996). The ALJ was entitled to find, based on Johnson's testimony and the opinions of Dr. Spellmann, Dr. Nicholas, and Johnson's counselors, that Johnson does not exhibit the deficits in adaptive functioning needed to meet Listing 12.05C.

## III. CONCLUSION

We affirm.

_____