# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3218

_____

Clyde O. Carter, Jr.

*Petitioner*

v.

Secretary, Department of Labor

*Respondent*

BNSF Railway Company

*Intervenor*

_____

Petition for Review of an Order of the
Department of Labor (except OSHA)

_____

Submitted: April 9, 2024
Filed: July 18, 2024

_____

Before SMITH, WOLLMAN, and GRASZ, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The Federal Rail Safety Act (FRSA) prohibits railroad carriers from retaliating against employees for reporting any "work-related personal injury." 49 U.S.C. § 20109(a)(4). Clyde O. Carter, Jr., filed a FRSA complaint with the Department of Labor, alleging that BNSF Railway Company (BNSF) initiated disciplinary investigations and thereafter terminated him in retaliation for reporting an injury he had suffered at work. An administrative law judge (ALJ) determined that BNSF had violated the FRSA, and the Administrative Review Board (ARB) affirmed. We granted BNSF's petition for review and vacated the ARB's order. BNSF Ry. Co. v. U.S. Dep't of Labor Admin. Review Bd., 867 F.3d 942 (8th Cir. 2017) (hereinafter Carter I).

A different ALJ denied Carter's claim on remand, finding that his injury report was not a contributing factor in BNSF's decisions to investigate and terminate him and that BNSF had instead investigated and terminated him for dishonesty. The ARB affirmed. Carter argues in his petition for review that substantial evidence does not support the contributing factor determination and that the ALJ committed procedural errors. We deny the petition for review.

## I. Background

### A. Factual Background

Carter applied to work for BNSF in 2005. The application included a medical questionnaire, on which Carter indicated that he had not missed more than two days of work due to illness, injury, hospitalization, or surgery and that he had not had any previous surgeries, back injuries, or back pain. Carter disclosed on his application that he had served in the Army and had received an honorable discharge. Carter signed the application, acknowledging that any misrepresentation or omission could be grounds for dismissal at any time. Following a medical examination and an interview, BNSF hired Carter as a carman in November 2005.

-2-

Carter injured his shoulder and neck at work in August 2007. BNSF manager Bryan Thompson was present at the time of the accident and spoke with Carter. Another supervisor brought Carter to a BNSF clinic, where a company doctor diagnosed him with a sprain and prescribed over-the-counter pain medication. Further evaluation by Carter's own physicians resulted in referrals for surgery, injections, and other therapy.

Carter filed a claim against BNSF under the Federal Employers' Liability Act (FELA) in 2008, alleging that BNSF's negligence had caused his injury. In July 2009 and again in January 2012, Carter was deposed in relation to the FELA lawsuit. A jury returned a verdict in favor of Carter in November 2012.

When reviewing materials related to Carter's FELA lawsuit in January 2012, Thompson discovered discrepancies between Carter's application materials and his 2009 deposition testimony and exhibits. Carter's testimony and documentation revealed that he had suffered knee and back injuries, had been excused from work for eleven days for the knee injury, had had his knee scoped, and had received worker's compensation for work-related injuries. Thompson also learned that Carter's military service included approximately three years in the Navy, from which he received an "other than honorable" discharge. BNSF thereafter initiated a disciplinary investigation into whether Carter had been dishonest in his application and related medical questionnaire.

Carter did not clock in on February 5, 2012. When a supervisor conducted a time-keeping review, Carter stated orally and in writing that he had been on time. BNSF manager Jeremiah Thomas reviewed the time-stamped security footage, which showed Carter arriving late. BNSF thereafter initiated a second disciplinary investigation to determine whether Carter had made a false statement regarding his on-time arrival at work.

BNSF general foreman Charles Sherrill presided over two internal hearings in March 2012. Sherrill found that Carter had been dishonest in his employment application and in his statement that he arrived to work on time on February 5. Sherrill recommended discipline in accordance with BNSF policies. BNSF's field superintendent of operations, Phillip McNaul submitted the hearing records and Sherrill's findings to Joseph Heenan, a director of labor relations, who recommended that Carter be discharged for dishonesty. BNSF terminated Carter's employment in two letters dated April 5 and April 16, 2012.

## B. Procedural Background

Carter filed a FRSA complaint in June 2012, alleging that BNSF retaliated against him for reporting his August 2007 work-related injury. To prevail on his claim, Carter was required to show by a preponderance of the evidence that he engaged in a protected activity, that BNSF knew or suspected that he had engaged in a protected activity, that he suffered an adverse action, and that "the circumstances raise[d] an inference that the protected activity was a contributing factor in the adverse action." Carter I, 867 F.3d at 945 (quoting Gunderson v. BNSF Ry. Co., 850 F.3d 962, 968 (8th Cir. 2017)). If Carter proved his affirmative case, BNSF could nonetheless avoid liability by demonstrating by clear and convincing evidence that it would have investigated and terminated him in the absence of his protected activity. Id. Only two issues were disputed: "whether Carter could prove the circumstances raised an inference that the injury report was a contributing factor in his termination, and if so, whether BNSF could prove that it would have fired Carter regardless of his protected activity." Id.

The Occupational Safety and Health Administration conducted the initial review of Carter's complaint and found that BNSF had not violated the FRSA. After Carter filed objections and requested a hearing, the matter was transferred to an ALJ. Carter testified at an evidentiary hearing regarding the application process, his injury,

-4-

the events leading to his disciplinary hearings, as well as the hearings themselves and his termination. Carter stated that his supervisors treated him differently after the injury and injury report, requiring him to speak to a supervisor when he called in sick and assigning him the work of an apprentice carman. Carter's former supervisor Larry Lee Mills testified that he had overheard Sherrill threatening to "nail Carter," an allegation that Sherrill denied. Mills also testified that he had seen a memo from McNaul instructing supervisors to write up employees who had been injured at work. McNaul testified that he had never written such a memo. Sherrill testified that he had based his decision as a hearing officer solely on his findings of Carter's dishonesty. Thomas testified regarding the time-keeping review. Thompson did not testify.

Heenan testified that based on his review of the transcript and exhibits presented in the disciplinary hearings, he believed Carter was a dishonest person. Heenan specifically found that Carter had been untruthful on his application and medical questionnaire when he stated that no injury caused him to miss more than two days of work, when he said that he had not experienced back pain or injuries, and when he disclosed only part of his military service. With respect to the second investigation, Heenan testified that although Carter had told his supervisors that he had arrived on time, security footage showed that he had been late.

The ALJ found that Carter's 2007 injury report initiated a series of events that led BNSF to terminate his employment and that BNSF would not have terminated Carter in the absence of the report. The ARB affirmed on other grounds, basing its decision on evidence of Carter's supervisors' post-injury change of attitude, its conclusion that Carter's FELA litigation was itself FRSA-protected, and its disbelief in BNSF's reasons for the disciplinary investigations and terminations.

We granted BNSF's petition for review, concluding that the ALJ had applied a flawed theory of causation and thus erred when it concluded that Carter's injury report contributed to his termination. Carter I, 867 F.3d at 946. We further

-5-

concluded that the ALJ's findings did not support the ARB's decision to affirm. With respect to Carter's claim that BNSF supervisors targeted him for discipline, the ALJ did not decide whether Mills's and Carter's testimony was credible and "made no finding of discriminatory animus by any BNSF supervisor." Id. at 947. Moreover, the ARB failed to follow its precedent when it considered Carter's FELA litigation as FRSA-protected, for the ALJ had made no finding that the FELA litigation "provided BNSF with 'more specific notification' of [Carter's] injury report." Id. at 948 (quoting LeDure v. BNSF Ry. Co., ARB No. 13-044, 2015 WL 4071574, at *4 (Admin. Rev. Bd. June 2, 2015)). Finally, we concluded that substantial evidence did not support the finding that "BNSF's justifications for terminating Carter were 'unworthy of credence.'" Id. at 947. We vacated the ARB's order and remanded to the ARB, which, in turn, remanded the matter to the Office of Administrative Law Judges for further proceedings.

Carter thereafter moved to amend the complaint to add a claim that BNSF interfered with his medical treatment, among other allegations. He also requested that the ALJ take judicial notice of the fact that a BNSF policy may have "incentivized retaliation," Wooten v. BNSF Ry. Co., 2018 WL 2417858, at *5 (D. Mont. May 29, 2018), and asked the ALJ to draw an adverse inference against BNSF for not calling Thompson as a witness. The motions were denied.[1]

---

[1]We find no error in the ARB's conclusions that the medical-interference claim was untimely and that an amendment to include that claim thus would be futile. See 49 U.S.C. § 20109(d)(2)(A)(ii) (statute of limitations); Foster v. BNSF Ry. Co., 866 F.3d 962, 966-67 (8th Cir. 2017) (scope of FRSA claim). We conclude that the ALJ acted within her discretion when she declined to take judicial notice of a magistrate judge's description of a BNSF policy that the judge had reviewed in camera at summary judgment, see 29 C.F.R. § 18.201(b) ("[a]n officially noticed fact must be one not subject to reasonable dispute"), and when she declined to draw an adverse inference against BNSF for not calling Thompson to testify, see New World Comm'cns v. N.L.R.B., 232 F.3d 943, 946 (8th Cir. 2000) (no error in declining to apply an adverse inference for failing to call a witness when "it does not appear why [the objecting party] could not have called her as a witness").

The ALJ on remand concluded that BNSF did not violate the FRSA when it investigated or terminated Carter.[2]  The ALJ adopted the findings that Carter had credibly described his application process and his failure to clock in.  She found Mills's testimony not credible, however, citing the fact that BNSF had terminated him for falsifying a leave request.  The ALJ instead found that Sherrill and McNaul harbored no discriminatory animus against Carter and that Heenan, who ultimately recommended termination, did not know about Carter's injury or his FELA lawsuit.  "Mr. Heenan believed in good faith that Mr. Carter was guilty of the conduct charged, that is dishonesty on his application and dishonesty surrounding the events of February 5, 2012, and that the notification of his injury or the FELA lawsuit played no part in his decision."  Finally, the ALJ concluded that the FELA lawsuit was not itself FRSA-protected activity because Thompson knew of Carter's injury the day it occurred and the lawsuit did not provide him "with any further notice of the injury."  The ARB affirmed.

## II.  Discussion

We review the ARB's decision under the deferential standard articulated in the Administrative Procedures Act.  49 U.S.C. § 20109(d)(4); 5 U.S.C. § 706(2).  "We set aside agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law.'"  Carter I, 867 F.3d at 945 (quoting 5 U.S.C. § 706(2)(A)).  We review the agency's legal determinations *de novo* and its factual

---

[2]The ALJ correctly concluded that Carter was required to prove his case by a preponderance of the evidence, and we reject Carter's argument to the contrary.  See Carter I, 867 F.3d at 945; Acosta v. Union Pac. R.R. Co., ARB No. 2018-0020, 2020 WL 624343, at *4 (Admin. Rev. Bd. Jan. 22, 2020) ("At the evidentiary stage after hearing, the complainant is required to prove the elements by a preponderance of the evidence, including proof that protected activity was a contributing factor in the adverse action . . . ."); 29 C.F.R. § 1982.109(a) ("A determination that a violation has occurred may be made only if the complainant has demonstrated by a preponderance of the evidence that protected activity was a contributing factor in the adverse action alleged in the complaint.").

findings "for substantial evidence on the record as a whole, considering evidence that both supports and detracts from the ALJ's decision." Id. "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate to support the ALJ's decision." Mercier v. U.S. Dep't of Labor, 850 F.3d 382, 388 (8th Cir. 2017) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). The ALJ's credibility determinations are given great deference. Id.

Carter argues that the ARB erred by concluding that his injury report did not contribute to BNSF's decision to investigate and terminate him. "A 'contributing factor' includes any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the [adverse] decision." Carter I, 867 F.3d at 945 (alteration in original) (quoting Gunderson, 850 F.3d at 969). In a FRSA retaliation case, "[t]he contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity." Id. at 946 (quoting Kuduk v. BNSF Ry. Co., 768 F.3d 786, 791 (8th Cir. 2014)). Temporal proximity between the protected activity and the adverse decision can serve as evidence of retaliation, but "[a] gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive." Id. at 945 (quoting Wells v. SCI Mgmt., L.P., 469 F.3d 697, 702 (8th Cir. 2006)).

Carter argues that the ARB erred by failing to consider as FRSA-protected activity his January 2012 FELA deposition. He submitted the transcript on remand as an exhibit and now claims that his second FELA deposition provided BNSF with further notification of his injury and that the close temporal proximity between that deposition and his termination is undeniable evidence of BNSF's retaliatory motive. Carter did not make this argument below. The ALJ thus made no findings whether the January 2012 deposition provided BNSF further notice of injury. See LeDure, 2015 WL 4071574, at *4 (explaining that FELA litigation can expand an employee's FRSA-protected notice to the employer). We decline to consider this argument, raised for the first time on appeal. See Maverick Transp., LLC v. U.S. Dep't of Labor, Admin. Review Bd., 739 F.3d 1149, 1153 (8th Cir. 2014) ("There is a basic

-8-

principle of administrative law that ordinarily an appellate court does not give consideration to issues not raised below." (quoting Etchu-Njang v. Gonzales, 403 F.3d 577, 583 (8th Cir. 2005) (internal alterations, quotation marks, and citation omitted))).

The ALJ found that the gap between Carter's termination in 2012 and his injury in 2007 or his deposition in July 2009 weighed against a finding of retaliatory motive. Substantial evidence supports that finding. Even assuming *arguendo* that the July 2009 deposition constituted an additional FRSA-protected report, the yearslong gap between the report and Carter's termination "suggests, by itself, no causality at all." Carter I, 867 F.3d at 945 (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 274 (2001) (per curiam)). The record supports the ALJ's finding that the July 2009 deposition notified Thompson in January 2012 of Carter's undisclosed prior injuries and military service, but did not further notify him of Carter's injury.

Substantial evidence also supports the ALJ's finding that Carter was not targeted for discipline after his injury report. In Carter I, we explained that "[i]f credited, Carter's and Mills's testimony could support an ultimate finding of intentional retaliation," but the ALJ had "made no credibility finding as to Mills's testimony" and did not identify whether Carter's testimony on the subject was part of his credible testimony or his "contradictory or inconsistent" testimony. 867 F.3d at 947. We defer to the ALJ's decision on remand to credit the testimony of Sherrill, McNaul, Thomas, and Heenan—whose consistent testimony supported a finding that supervisors had not retaliated against Carter—and to not give any weight to the testimony of Mills—who had been fired for dishonesty. That these managers were performing their roles pursuant to company policy refuted Carter's testimony that the managers had worked together to retaliate against him. On remand, the ALJ answered the "highly relevant questions" that we identified in Carter I and that the first ALJ avoided. Id. at 947. A reasonable mind would find the evidence adequate to support the finding that Carter's injury report neither resulted in workplace animus nor contributed to BNSF's decision to investigate or terminate Carter. Id.

Conclusion

We conclude that substantial evidence supports the finding that "the notification of [Carter's] injury or the FELA lawsuit played no part in [Sherrill's or Heenan's] recommendations or the ultimate decision to terminate his employment." Because Carter did not prove that his injury report was a contributing factor in BNSF's decision, we need not consider whether BNSF would have terminated him regardless of his protected activity.

The petition for review is denied.[3]

_____

[3]Carter argued in his reply brief that this court lacked jurisdiction over BNSF's petition for review in Carter I because BNSF named the ARB as the respondent, not the Secretary of the Department of Labor. He contends that the first ARB decision thus controls. The Department's Office of the Solicitor, which represented the ARB in the first appeal and represents the Secretary here, has not complained. We conclude that any error in naming the respondent in Carter I did not deprive this court of jurisdiction over BNSF's petition. See Chicago G.W. Ry. Co. v. First Methodist Episcopal Church, 102 F. 85, 87 (8th Cir. 1900) (assuming the mistake in name was well founded, no benefit would accrue and no harm would come to the complaining party, for "this court would merely direct the substitution of" the correct party).