# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3337

_____

Geneva Goff,

      Plaintiff - Appellant,

v.

Jo Anne B. Barnhart,
Commissioner of Social Security,

      Defendant - Appellee.

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted: June 22, 2005
Filed: August 31, 2005

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Geneva Goff appeals from the district court's[1] order affirming the Commissioner of Social Security's denial of her application for disability insurance and supplemental security income benefits. Goff claims she is disabled because two strokes have affected her walking, motor capabilities, and speech. She also claims she suffers from depression. On appeal, Goff argues the Administrative Law Judge (ALJ) erred by: 1) failing to give proper weight to the opinions of Goff's treating

_____

[1]The Honorable Chief Judge Ronald Longstaff, United States District Court for the Southern District of Iowa.

physician and psychiatrist, 2) discounting her subjective complaints of pain, and 3) finding Goff could perform the work of a companion or personal assistant. We affirm the decision of the district court.

I

In October 1995, Goff suffered a stroke. Following her stroke, she was neurologically normal and her condition was stable. In January 1997, Goff sought help for depression. In March 1997, Goff suffered a second stroke. During this time, she had been working as a Certified Nurse's Assistant (CNA). She continued work as a CNA until January 2001, when she was fired for allegedly slapping a resident. From early 2001 through the hearing, Goff worked approximately fifteen hours per week as a kitchen aide. Goff filed for disability benefits on January 29, 2001, and for supplemental security income on February 21, 2001, alleging she became disabled beginning January 19, 2001. Goff claimed she was unable to work because multiple strokes caused slurred speech and balance problems. Additionally, she claimed she suffered from depression.

The ALJ determined Goff met the disability insured status requirements of the Social Security Act on January 19, 2001, and continued to meet them through at least December 2005. The ALJ found Goff had not engaged in substantial gainful activity since January 19, 2001. The ALJ further determined Goff suffered severe impairments in combination, consisting of degenerative changes in her knees, more severe on the left; obesity; status post strokes from 1997 with non-severe dysarthria; depression; and non-severe hearing loss amenable to improvement with a hearing aid. However, the ALJ found Goff's impairments did not meet the Social Security Income Listings.

While the ALJ concluded Goff was unable to perform past relevant work, the ALJ found Goff still retained the residual functional capacity (RFC) to perform work

which was limited to lifting 10 pounds frequently and 20 pounds occasionally, and standing and/or walking no more than six hours of an eight-hour day. The ALJ determined Goff should avoid very complex and detailed work, but found she was capable of performing more than merely simple, routine, and repetitive work. In determining Goff's RFC, the ALJ found Goff was forty-nine years old, which is defined as a younger-aged individual; she had a high school education; and she had acquired work skills which were transferable to the skilled or semi-skilled work functions of other work, including feeding and transporting individuals, record keeping, and assisting with activity of daily living.

Further, in determining Goff's RFC, the ALJ concluded the hearing testimony regarding the intensity and severity of Goff's symptoms was not fully credible. At the hearing, Goff testified about the severe pain she experienced after working. The ALJ discounted Goff's subjective complaints because they were inconsistent with the record as a whole. The ALJ also found that Goff's limitations related to her speech and depression were not severe, and her seizures had been controlled with medicine. Additionally, the ALJ found no evidence Goff could not afford pain medication.

The ALJ also discounted certain opinions from two of Goff's treating sources. In early 2001, both Dr. Christopher Okiishi, Goff's treating psychiatrist, and Dr. Matthew Prihoda, Goff's long-term treating physician, submitted RFC assessments, where they backed Goff's claim of significant limitations. The ALJ did not request clarification from either doctor. Instead, the ALJ discounted both opinions, citing inconsistencies with other objective medical evidence, Goff's activity level, and her work history.

Accordingly, a Vocational Expert (VE), considering Goff's age, education, previous work experience, and RFC, determined jobs still existed in significant numbers in the national economy that Goff could perform. The VE cited personal

attendant and companion as examples of such jobs.  As such, the ALJ determined Goff was not under a disability as defined by the Social Security Act.

II

This court reviews *de novo* a district court's decision upholding the Commissioner's denial of social security benefits.  Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted).  The court will affirm the ALJ's decision if it is "supported by substantial evidence on the record as a whole."  Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005) (citation omitted).  "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion."  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).  Evidence that both supports and detracts from the ALJ's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.  Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001).  If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

The Commissioner's regulations governing determinations of disability set forth a five-step sequential evaluation process which the Commissioner must use in assessing disability claims.  See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f)).

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

-4-

Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (citation omitted). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled. The fourth step in this analysis requires the ALJ to determine a claimant's RFC." Id. at 590-91. "A disability claimant has the burden to establish her RFC." Id. at 591 (citing Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004)). If the claimant establishes her inability to do past relevant work, then the burden of proof shifts to the Commissioner. Id. "The Commissioner must then prove, first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." Id. (citing Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)). Moreover, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." Stormo, 377 F.3d at 806.

A

Goff contends the ALJ, in determining her RFC, erred by not giving proper weight to the opinions of her long-term treating physician and her treating psychiatrist. "[A] treating physician's opinion is given 'controlling weight' if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Reed, 399 F.3d at 920 (quotations and citations omitted). "A treating physician's opinion 'do[es] not automatically control, since the record must be evaluated as a whole.'" Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995). An ALJ may " discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000).

In August 2002, Dr. Prihoda, Goff's long-term treating physician, submitted an RFC assessment, where he found, among other things, that Goff could only stand or walk for two to three minutes at one time, could seldom reach with her upper extremities, and could handle objects for less than two hours of an eight-hour work day. The ALJ, finding the opinion inconsistent with other substantial evidence, discounted it. The ALJ pointed out Goff testified she worked five-hour shifts for fifteen to twenty-three hours a week as a kitchen helper, where she was on her feet for about two hours at a time, stacked dishes, lifted sacks of potatoes, and lifted ice buckets. We find this testimony to be substantial, indeed compelling, evidence inconsistent with Dr. Prihoda's assessment. As such, the ALJ is not required to give the assessment controlling weight. While the ALJ also found Dr. Prihoda's opinion to be internally inconsistent, we need not comment on that, as an appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion.

Goff also argues the ALJ erred in failing to give controlling weight to Dr. Okiishi's opinion. The ALJ found Dr. Okiishi's opinion that Goff suffered extreme limitations was starkly inconsistent with Dr. Okiishi's opinion in February 2001 that Goff's Global Assessment of Functioning (GAF) was 58. According to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), a GAF of 51 to 60 indicates moderate symptoms. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). Thus, Goff's GAF is inconsistent with Dr. Okiishi's opinion that she suffers from extreme limitations. Additionally, despite Dr. Okiishi's opinion that Goff would have difficulty maintaining social functioning, Goff stated she was able to relate well with other people and her former employers described her as personable. Again, we find this to be substantial evidence inconsistent with Dr. Okiishi's assessment, and, as such, the ALJ was not compelled to give controlling weight to the opinion.

Goff contends Bowman v. Barnhart, 310 F.3d 1080, 1085 (8th Cir. 2002), requires the ALJ to contact Dr. Prihoda and Dr. Okiishi for clarification of their

respective opinions before discounting them. We disagree. While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." Stormo, 377 F.3d at 806. The Commissioner's regulations explain that contacting a treating physician is necessary only if the doctor's records are "inadequate for us to determine whether [the claimant is] disabled" such as "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e), 416.912(e). Here, the ALJ did not find the doctors' records inadequate, unclear, or incomplete, nor did it find the doctors used unacceptable clinical and laboratory techniques. Instead, the ALJ discounted the opinions because they were inconsistent with other substantial evidence. In such cases, an ALJ may discount an opinion without seeking clarification.

B

Goff next contends the ALJ improperly discounted Goff's allegations of severe and disabling pain. We disagree.

First, Goff argues the ALJ was required to make an express credibility finding on each of the Polaski factors. Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). In Polaski, the court required the ALJ to consider the "claimant's prior work history; daily activities; duration, frequency and intensity of the pain; dosage, effectiveness and side effects of medications; precipitating and aggravating factors; and functional restrictions." O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003) (quotations and citations omitted) (reciting Polaski factors). However, as the government points out, the ALJ did make an express credibility finding. The ALJ found Goff had medical conditions which caused some pain and limitations, but determined Goff's

subjective complaints were not fully credible and were not as limiting as she alleged. Moreover, an ALJ "need not explicitly discuss each Polaski factor." Strongson, 361 F.3d at 1072 (citation omitted). "It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." Id. Here, the ALJ considered and discussed the factors; thus, the ALJ committed no error.

Next, Goff argues the ALJ disregarded her allegations of pain solely because of the lack of corroborating medical evidence. She further argues the ALJ's reasons for discounting her credibility are not supported by the record. To establish this, Goff notes that in 2000 her neurologist, Dr. Shavir Pour, stated Goff has mild limitation in her back due to pain and noted Goff complained of one to two small seizures a month. Because of the seizures, Dr. Pour recommended an increase in Depakote to 500 mg twice a day and referred her to a physical therapist to help with her lower back pain and sacroiliac joint pain.

"It is well-settled that an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." O'Donnell, 318 F.3d at 816 (citing Jones v. Callahan, 122 F.3d 1148, 1151 (8th Cir. 1997)). However, "[t]he ALJ may disbelieve subjective complaints 'if there are inconsistencies in the evidence as a whole.'" Strongson, 361 F.3d at 1072 (quoting Goodale v. Halter, 257 F.3d 771, 774 (8th Cir. 2001)). We "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).

In the instant case, the lack of corroborating evidence was just one of the factors the ALJ considered. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). The ALJ found Goff did not take medications for her pain, she did not use canes or crutches to help the impairment, and there was no medically determinable impairment fully explaining Goff's pain. However, the ALJ also used a number of

different sources to reach its decision. First, examining objective medical evidence, the ALJ noted a December 2000 CT of Goff's brain showed no acute process, which is indicative of a fairly successful recovery from her stroke. Additionally, Goff had a negative straight-leg raising test, no focal or motor deficits, and normal sensation and reflexes. X-rays of Goff's hip and knee were unremarkable on one occasion and showed only mild degenerative changes on another.

Second, the ALJ examined Goff's activity level. In Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001), the court stated "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Working generally demonstrates an ability to perform a substantial gainful activity. See Naber v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994). Throughout Goff's claimed period of disability, the ALJ noted, Goff persistently worked as a part-time kitchen aide. Goff was also able to vacuum, wash dishes, do laundry, cook, shop, drive, and walk. These inconsistencies between Goff's subjective complaints and her activities diminish her credibility. See Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain).

Third, Goff gainfully worked as a nurse's aide after her second stroke in 1997. The ALJ found no evidence of significant deterioration in her condition since that time. The fact that Goff worked with the impairments for over three years after her strokes, coupled with the absence of evidence of significant deterioration in her condition, demonstrate the impairments are not disabling in the present. See Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992). Furthermore, Goff stopped working because she was fired for slapping a patient, not because of her disability. Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition. See, e.g., Johnson, 240 F.3d at 1147 (finding the

claimant did not lose his job because of his disability, he lost it because his position was eliminated).

In passing, Goff also contends the ALJ should not have considered her failure to take prescription medications as an indication that her joint pain was not as severe or limiting as alleged because she could not afford treatment. However, there is no evidence Goff was ever denied medical treatment due to financial reasons. Without such evidence, Goff's failure to take pain medication is relevant to the credibility determination. See Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994).

Considering the ALJ's findings regarding other objective medical evidence, Goff's activity level, and Goff's work record, it is apparent the ALJ sufficiently considered her complaints of disabling pain but expressly discredited them for good cause because they were inconsistent with the evidence as a whole. As such, an ALJ may discount Goff's subjective complaints, and we will not disturb the decision.

C

Goff argues the ALJ failed to consider whether the companion and personal attendant positions were realistically suited to Goff's RFC considering her speech impairment and depression. "The RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant." Young, 221 F.3d at 1069 n.5 (internal quotations and citations omitted). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

Here, the ALJ found Goff's speech impediment was not as limiting as alleged because Goff effectively worked as a nurse's aide with her speech impediment and there is no indication that her ability to speak has deteriorated since her stroke in 1997. See Orrick, 966 F.2d at 370. Further, the ALJ noted she was able to understand Goff at the hearing. See Johnson, 240 F.3d at 1147-48 (holding that an ALJ's personal observations of the claimant during the hearing is a factor to be considered in assessing the credibility of her alleged limitations). Thus, we conclude the ALJ's assessment of Goff's speech impediment in determining her RFC and future gainful employment possibilities is supported by substantial evidence.

Similarly, the ALJ found Goff's depression was not as limiting as Goff alleged. According to the DSM-IV, a GAF between 51 and 60 is indicative of moderate symptoms or moderate difficulties in social, occupational or school functioning. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). Goff's treating and examining sources regularly ranked her GAF at 60. Thus, her GAF contradicts her assertion of severe mental impairments. Further, Goff testified her antidepressant medication helped her symptoms, and her medical records indicate she was stable on medication. As such, the ALJ's assessment of Goff's depression in determining her RFC and future gainful employment possibilities is supported by substantial evidence.

Goff also claims the hypothetical the ALJ posed to the VE was deficient because "[t]here was no mention of Goff's severe depression, her severe degenerative joint disease, her obesity, her prior history of seizures, or Goff's descriptions of severe pain in her activities of daily living." "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) (citing Prosch, 201 F.3d at 1015). Here, the ALJ properly included only those limitations supported by the record as a whole in the hypothetical. See Haggard v. Apfel, 175 F.3d 591, 595, (8th Cir. 1999) (holding an ALJ need not

-11-

include additional complaints in the hypothetical not supported by substantial evidence). Accordingly, the ALJ's hypothetical was proper. "A vocational expert's testimony 'based on a properly phrased hypothetical question constitutes substantial evidence.'" Id. (quoting Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1989). Therefore, we will not disturb the ALJ's findings.

III

The judgment is affirmed.

_____

-12-