# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

No. 09-3570

Justin E. Partee,        *
       *
          Appellant,        *
       *    Appeal from the United States
      v.        *    District Court for the
       *    Western District of Arkansas.
Michael J. Astrue,        *
Social Security Commissioner,        *
       *
          Appellee.        *

Submitted: February 14, 2011
Filed: April 20, 2011

Before RILEY, Chief Judge, WOLLMAN and BYE, Circuit Judges.

RILEY, Chief Judge.

Justin E. Partee appeals the district court's[1] order affirming the Social Security Administration's denial of his application for supplemental security income (SSI) under 42 U.S.C. § 405(g). Partee contends the administrative law judge (ALJ) (1) failed to consider properly Partee's obesity, depression, and organic brain

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas, adopting the report and recommendations of the Honorable James R. Marschewski, United States Magistrate Judge for the Western District of Arkansas.

syndrome, (2) improperly discredited Partee's subjective statements and certain medical evidence, and was biased against Partee's doctor, and (3) inadequately supported the ALJ's residual functional capacity assessment (RFC). Because the ALJ's decision was supported by substantial evidence and the ALJ acted properly, we affirm.

## I.     BACKGROUND

In 2001, Partee suffered a "crush injury" to his left ankle and foot when a fifty gallon drum fell on his leg. To repair the damage, Partee underwent several medical procedures between 2002 and 2004. On August 18, 2004, Partee's treating physician, Charles Varela, M.D., described Partee as morbidly obese, and diagnosed Partee with ankylosis in the left ankle, a condition preventing him from "performing many manual labor-type of occupations, particularly those requiring standing, walking, climbing, squatting, lifting and carrying activities." On February 25, 2005, Partee filed for SSI based on disability.

In April 2007, Partee visited a doctor because of abdominal pains. During the visit, Partee reported he was not taking medications, he experienced occasional ankle pain, and his occupation was "bushhogging"[2] for his grandfather. Partee's lawyer referred Partee to Vann A. Smith, M.D., who, on July 2, 2007, performed a neuropsychological examination "in conjunction with an ongoing application for Social Security Disability benefits." Dr. Smith found Partee "oriented to gross time, generalized place and person. [Partee's] affect was muted and shallow. [Partee's] mood was mildly dysthymic."[3] Dr. Smith noted Partee's pain resulting from his 2001

---

[2]Bushhogging is the clearing of land, usually using a bulldozer or tractor. Cf. State v. Long, 45 S.W.3d 611, 618 (Tenn. Crim. App. 2000).

[3]Dysthymia is "[a] chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by" other symptoms. Stedman's Medical Dictionary 602 (28th ed. 2006).

ankle injury was marginally controlled by medication and Partee reported a pain level of "6-10" on a 0-10 scale. Dr. Smith concluded Partee's mental limitations left him disabled. Dr. Smith gave Partee a current global assessment of functioning (GAF) score of 30-35, indicating major impairment in several areas of functioning.

On October 10, 2007, Nancy A. Bunting, Ph.D., performed an intellectual assessment of Partee. Dr. Bunting found Partee's mental impairments ("borderline range of intelligence") did not interfere with his day-to-day functioning, he was able to act appropriately in public, he communicated in an intelligible and effective manner, and he could do routine structured work. Dr. Bunting opined Partee's mental impairments limited his concentration, which impacted his ability to complete assigned tasks in a timely manner. In assessing Partee's ability to work eight hours a day, five days a week, Dr. Bunting found Partee capable of working except for an inability to understand, remember, or carry out complex instructions, and an inability to make judgments on complex work-related decisions. Dr. Bunting gave Partee a GAF score of 55-65, indicating mild to moderate mental impairment.

On June 27, 2007, the ALJ held an administrative hearing at which Partee testified he normally experienced moderate pain, but experienced severe pain when he stood for too long or walked long distances. Partee explained he worked full-time for six months in 2006 driving a truck cleaning port-a-potties, but was laid off because of a seasonal slowdown. Partee reported his physical condition did not interfere with his ability to work at this job because he was mostly sitting.

On January 24, 2008, the ALJ decided Partee "has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." The ALJ explained Partee can occasionally lift or carry ten pounds, sit for six hours, and walk for two hours. The ALJ found Partee was able to work despite some limitations. The ALJ also found Partee's statements about the extent of Partee's inability to work not entirely credible.

The ALJ further found Dr. Smith's assessment "highly inconsistent with the objective medical evidence and other evidence of record." The ALJ gave Dr. Smith's opinion little weight and found Dr. Bunting's evaluation "more reliable," because Partee was a recent, short-term patient of Dr. Smith's and Dr. Smith evaluated Partee specifically for the SSI appeal.

Partee appealed the ALJ decision and the Appeals Council denied his appeal. Next, Partee sought judicial review. The magistrate judge issued a report and recommended the district court affirm the ALJ's decision and dismiss with prejudice. Partee objected to the report and recommendation. The district court adopted the magistrate judge's report and recommendation affirming the ALJ's decision. Partee appeals.

## II.    DISCUSSION
### A.    Standard of Review

"We review de novo the District Court's determination of whether substantial evidence on the record as a whole supports the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006) (internal quotation marks omitted)). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (internal quotation marks omitted)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Id.

### B.    Obesity and Mental Impairment Claims

Partee's claims can be broken into three categories. First, Partee claims the ALJ failed to consider his obesity. Second, Partee contends the ALJ failed to consider his depression and organic brain syndrome. Third, Partee asserts the ALJ failed to rely

on a qualified neuropsychologist and did not follow the techniques required under 20 C.F.R. §§ 404.1520a(e)(3), 416.920a(e)(3).

First, the ALJ considered Partee's obesity, and explained Partee's "medical records certainly bear out the fact that [Partee's] obesity limits his physical activity and is a contributing factor to his medical condition." The ALJ adopted the opinions of Dr. Bunting and Dr. Varela who were aware of the claimant's obesity. See Prochaska v. Barnhart, 454 F.3d 731, 736-37 (7th Cir. 2006) (deciding, when an ALJ adopts the opinion of a doctor aware of an obesity claim, the ALJ's failure to consider the claim explicitly is harmless error). The ALJ adequately considered Partee's obesity.

Second, we conclude the ALJ's determination Partee is not disabled as a result of mental impairment is supported by substantial evidence. Some of the factors an ALJ may consider when determining a claimant's mental impairments are (1) the claimant's failure to allege mental impairments in his complaint, (2) failure to seek mental treatment, (3) the claimant's own statements, and (4) lack of medical evidence indicating mental impairment. See Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993). Partee did not allege a mental impairment on his application for benefits. Except for Dr. Smith, Partee did not see anyone regarding a mental impairment. Partee did not report to Dr. Bunting any history of mental or emotional problems that interfere with his working. Dr. Smith determined Partee was only mildly dysthymic, and Dr. Bunting did not mention any signs of depression or severe mental impairment during her session with Partee. As a result, we find the ALJ's determination that Partee did not suffer from a debilitating mental impairment is supported by substantial evidence in the record as a whole.

Third, the ALJ did not violate 42 U.S.C. § 421(h) by not remanding the case for a consultation by a psychologist or psychiatrist. Substantial evidence supports the ALJ's decision that Partee did not suffer from a debilitating mental impairment. Dr.

Bunting evaluated Partee and found no debilitating mental impairment. Because the ALJ relied upon "pertinent symptoms, signs, and laboratory findings to determine whether [Partee had] a medically determinable mental impairment," 20 C.F.R. § 416.920a(b)(1), section 421(h) was not violated.

### C.     ALJ's Consideration of Medical Evidence

Partee charges the ALJ improperly (1) rejected the findings of Dr. Smith and held a bias against Dr. Smith, and (2) discredited Partee's subjective statements regarding his limitations. We disagree.

### 1.     Dr. Smith's Findings

"[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Medhaug, 578 F.3d at 815 (quoting Goff, 421 F.3d at 790) (internal quotation marks omitted). "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id.

The ALJ reasonably questioned whether Dr. Smith was Partee's treating psychologist because of the brevity of their contact and the fact Dr. Smith specifically conducted the evaluation for an SSI appeal. Assuming Dr. Smith were Partee's treating psychologist, Dr. Smith's conclusions directly contradict Dr. Bunting's and Dr. Varela's assessments. Dr. Smith diagnosed Partee with a cognitive dysfunction, determining Partee's symptoms "interfere significantly with [Partee's] capacity to carry out routine daily activities in a consistent manner . . . [rendering Partee] disabled." In 2004, Dr. Varela explained Partee physically "should be able to tolerate sedentary occupations." In 2007, Dr. Bunting found Partee to have a mild to moderate mental impairment. The ALJ found "the evaluation of [Partee's] mental capacities and

limitations provided by Dr. Nancy Bunting . . . more reliable." Because Dr. Smith's determination contradicted other objective evidence in the record, the ALJ's decision to give less weight to Dr. Smith's determination was reasonable.

As for Partee's charge that the ALJ was biased against Dr. Smith, Partee provides no evidence to support the allegation. There is a "presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47 (1975). Partee's bias claim consists entirely of unsupported allegations based on the ALJ's decision itself, and we find it unfounded.

### 2. Partee's Subjective Statements

The ALJ must make a credibility determination before discrediting Partee's subjective statements of pain. See Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000). "To assess [a claimant's] credibility, the ALJ [must] consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions." Id. at 971-72 (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ may discredit a claimant based on inconsistencies in the evidence. See Goff, 421 F.3d at 792.

The ALJ considered (1) Partee's full-time employment driving a truck in 2006, (2) Dr. Varela's and Dr. Bunting's determinations that Partee was capable of sedentary occupations requiring routine structured work, (3) the "nature, degree, and level of [Partee's] subjective pain," and (4) the effectiveness of Partee's medication. The ALJ is "not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting [a claimant's] subjective complaints." Lowe, 266 F.3d at 972. Upon review of the record, we determine the ALJ adequately considered the evidence before deciding Partee's subjective statements of pain were incredible.

### D. Residual Functional Capacity Assessment

Partee challenges the support for the ALJ's RFC determination that Partee was able to work. The RFC must (1) give "appropriate consideration to all of [the claimant's] impairments," and (2) be based on competent medical evidence establishing the "physical and mental activity that the claimant can perform in a work setting." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996). Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC. See Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).

The ALJ considered all of Partee's physical and mental impairments. The ALJ based Partee's RFC on Dr. Varela's assessment of Partee's physical working capability and Dr. Bunting's assessment of Partee's mental working capability. The ALJ posed a sufficient and proper hypothetical to a vocational expert. See Goff, 421 F.3d at 794 (explaining a hypothetical "is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true") (quoting Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001)). Because "[a] vocational expert's testimony 'based on a properly phrased hypothetical question constitutes substantial evidence,'" the ALJ's RFC decision is supported by substantial evidence. Id. (quoting Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999)).

## III. CONCLUSION

We affirm.

_____