# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 13-3357

———————————————

Ronald L. Bernard, duly appointed representative of Todd Michael Bernard, deceased

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

—————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

—————————

Submitted: October 7, 2014
Filed: December 22, 2014

—————————

Before RILEY, Chief Judge, WOLLMAN and BYE, Circuit Judges.

—————————

BYE, Circuit Judge.

Ronald L. Bernard (Ronald) appeals the district court's[1] affirmance of the Social Security Commissioner's (Commissioner) decision to deny Todd Michael

—————————

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable Jeffrey J. Keyes, United States Magistrate Judge for the District of Minnesota.

Bernard (Todd) disability benefits and supplemental security income under Titles II and XVI of the Social Security Act. We affirm.

I

Todd, born January 29, 1963, was forty-four years old at the time of his alleged disability onset in April 2007 and at the time he filed his application in December 2007. Todd was a high school graduate, and since graduation, he worked primarily as a laborer, often working for temporary services. Todd's last employment prior to filing ended in April 2007 because the temporary job was completed. Todd indicated his daily activities included watching television, doing errands, mowing the lawn, shoveling snow, eating, cleaning the house, walking the dog, washing clothes, and cleaning dishes. Todd also enjoyed video games, riding his bicycle, and playing cards and dice. He played poker with friends once a week and visited the grocery store and library on a regular basis.

In April 2007, Todd claimed an inability to work due to anxiety, cramping in his feet, and difficulty breathing. Todd first sought treatment for mental health issues in December 2007 and primarily saw Michael G. Graff, a licensed social worker providing psychotherapy, and Dr. Roger A. Johnson, a psychiatrist. Up until the time of Todd's death in July 2009, Graff, Johnson, and other medical professionals diagnosed and treated Todd for a variety of conditions, including: major depressive disorder, alcoholism, alcohol dependence, emphysema, and generalized anxiety disorder. Todd also experienced tremors of unknown etiology; medical professionals were unsure whether they were caused by anxiety or alcohol withdrawals. Todd was prescribed a variety of medications to treat his conditions.

An administrative law judge (ALJ) reviewed Todd's claim and held an evidentiary hearing. During the hearing, the ALJ heard testimony from Ronald, Todd's roommate Isaiah Lewis, a medical expert, and a vocational expert. Ronald

also offered into evidence numerous documents, including Todd's applicable medical records and disability reports. After considering Todd's claim according to the five-step analysis in the Social Security regulations, the ALJ decided: (1) Todd had not engaged in substantial gainful activity since April 14, 2007, the alleged onset date; (2) Todd suffers from emphysema, tremors, an affective disorder, an anxiety disorder, and alcohol dependence; (3) Todd did not have an impairment or combination of impairments so severe as to meet or equal the criteria of a listed impairment; (4) Todd had the residual functional capacity to perform light work and was capable of performing his past relevant work as a laborer; and (5) Todd was "not under a disability." Accordingly, the ALJ concluded Todd was not disabled from April 14, 2007, through the date of his death, July 4, 2009, and denied benefits.

The district court agreed with the ALJ's decision, finding although the ALJ improperly weighed the medical professionals' opinions, the error was harmless because substantial evidence in the record as a whole supported a finding that Todd's limitations would not be disabling if he stopped using alcohol. Ronald appeals.

II

We review *de novo* the district court's decision affirming the denial of benefits. Byes v. Astrue, 687 F.3d 913, 915 (8th Cir. 2012). The court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005) (internal quotation marks and citation omitted). It is "less than a preponderance . . . ." Moore v. Astrue, 572 F.3d 520, 522 (8th Cir. 2009) (internal quotation marks and citation omitted). On review, the court considers "both evidence that detracts from and evidence that supports the Commissioner's decision." Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004). "If, after review, we find

it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the decision of the Commissioner." Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003) (internal quotation marks and citation omitted).

In order for an individual to qualify for benefits under the Social Security Act and the accompanying regulations, he or she must be disabled. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010) (internal quotation marks and citation omitted). Disability is determined according to a five-step process, considering whether: (1) the claimant was employed; (2) he was severely impaired; (3) his impairment was, or was comparable to, a listed impairment; (4) he could perform past relevant work; and if not, (5) if he could perform any other kind of work. See 20 C.F.R. §§ 404.1520(a), 416.920(a). In this case, the ALJ, after completing the five-step process, determined Todd was able to perform his past relevant work as a laborer and perform other jobs such as a packager or an assembler. Consequently, the ALJ determined Todd was not disabled and was not entitled to benefits.

Ronald contends there is not substantial evidence in the record as a whole supporting the ALJ's decision because the ALJ did not give proper weight to the opinions of Todd's long-term treating social worker and psychiatrist, Graff and Dr. Johnson, respectively. Between December 2007 and July 2009, Todd met with Graff eight times and with Dr. Johnson four times. In a mental impairment questionnaire prepared prior to the ALJ hearing, Graff and Dr. Johnson indicated Todd had marked and extreme functional limitations because of his mental impairments and experienced four or more episodes of decompensation within a twelve-month period. Graff and Dr. Johnson also indicated Todd had "[a]n anxiety related disorder and

-4-

complete inability to function independently outside the area of [his] home." In regard to Todd's alcoholism, they explained "[i]t is impossible to separate out what attributes contribute to [Todd's] dysfunction while he was drinking. He was equally disabled, however, when not drinking." "[Todd] presented even when not drinking 'as a broken man.'" Ronald further argues the ALJ should have given greater weight to the opinion of Dr. Alford Karayusuf, who observed Todd's hand tremors and opined the severity of the tremors, presuming they were not derived from alcohol withdrawal, would prevent Todd from being able to interact effectively with fellow workers, supervisors, and the public.

The ALJ considered but did not give controlling weight to the opinions of Graff and Dr. Johnson because they did not have long-term treatment relationships with Todd, their opinions regarding extreme limitations and an inability to work were largely based on Todd's subjective allegations which the ALJ found to be not fully credible, and the opinions were not well supported by clinical findings or laboratory diagnostic techniques and were not consistent with other significant evidence of record. In regard to Dr. Karayusuf, the ALJ considered his opinion about Todd's hand tremors but determined the record did not establish a level of severity which would preclude Todd from all gainful employment.

Since the ALJ must evaluate the record as a whole, the opinions of treating physicians do not automatically control. Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014). "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (internal quotation marks and citation omitted). "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Goff, 421 F.3d at 790 (internal quotation marks and

-5-

citation omitted). An ALJ may also give less weight to a conclusory or inconsistent opinion by a treating physician. Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007).

After evaluating the record as a whole, other substantial evidence is inconsistent with the opinions of Graff, Dr. Johnson, and Dr. Karayusuf. First, Todd failed to follow the treatment recommendations of both Dr. Johnson and Graff and missed appointments with each of them. Wildman v. Astrue, 596 F.3d 959, 965-66 (8th Cir. 2010) ("[N]oncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion . . . ."). During Todd's initial meeting with Dr. Johnson on December 12, 2007, Dr. Johnson prescribed Fluoxetine and Trazodone to help Todd with his depression and recommended a follow-up visit in two weeks. Todd did not meet with Dr. Johnson until January 23, 2008, six weeks later. By that time, Todd had ceased taking his anti-depressant medications. Dr. Johnson prescribed Todd a different anti-depressant medication, Mirtazopine, and scheduled a follow-up appointment with Todd for two weeks later, on February 6, 2008. Todd failed to appear at this appointment. In an October 2008 disability report, Todd admitted he was not taking his anti-depressant medication because of his drinking. See Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) ("[A] failure to follow prescribed medical treatment without good cause is a basis for denying benefits."). Todd did not visit Dr. Johnson again until May 4, 2009, a span of approximately fifteen months, and at that time, Todd continued to drink. Dr. Johnson met with Todd only one more time, and during this visit, Dr. Johnson recommended Todd stay sober.

Graff also recommended Todd stay sober as a part of his treatment and attend Alcoholics Anonymous meetings. Although Todd met with Graff on December 12, 2007, and on January 23, 2008, the same days he met with Dr. Johnson, Todd failed to appear at his appointment with Graff on February 6, 2008, as well. Todd did not meet with Graff again until June 25, 2008, and during this visit, Todd relayed he was drinking quite a bit and had generally not been making appointments or taking care of himself. Graff noted over Todd's next five appointments, which occurred between

November 4, 2008, and June 9, 2009, Todd continued to drink and at times had no life beyond drinking. Todd then failed to appear at his last appointment with Graff on June 30, 2009. The record is devoid of any justified reason for Todd missing his appointments with either Graff or Dr. Johnson. See 20 C.F.R. §§ 404.1530(b), 416.930(b) (stating an unjustified failure to follow prescribed treatment is grounds for denying disability). Consequently, giving controlling weight to the opinions of Graff and Dr. Johnson is unjustified because neither had the opportunity to assess Todd when he was following a prescribed treatment plan, including taking his medication and staying sober.

Further, the ALJ found there was some stabilization in Todd's symptoms when he was compliant with medications, and we agree. During Todd's appointment with Dr. Johnson on May 4, 2009, Dr. Johnson re-prescribed Mirtazopine to Todd. Then, Graff noted during Todd's visit on May 12, 2009, that Todd was sleeping much better as a result of the medication. During Todd's return visit to Dr. Johnson on June 9, 2009, Dr. Johnson also noted Todd's condition, although still depressed, had improved, his sleep was good, and he was not having side effects from the medication. As a result, Dr. Johnson prescribed Todd an additional anti-depressant, Bupropion XL. Todd's roommate also testified during the hearing before the ALJ that Todd's tremors improved when Todd used his medication. See Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (internal quotation marks and citation omitted)); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000) ("Impairments that are controllable or amenable to treatment do not support a finding of total disability." (internal quotation marks and citation omitted)). Todd saw Dr. Karayusuf on December 13, 2007, the day after Todd first saw Dr. Johnson and was prescribed medication. Todd did not see Dr. Karayusuf for a follow-up appointment, and therefore, he did not have the opportunity to assess the effects of the medication on, and the resulting improvement of, Todd's hand tremors. Accordingly, substantial

evidence in the record is also inconsistent with the opinion of Dr. Karayusuf and supports the ALJ's findings that Todd was not disabled.

Additionally, the ALJ did not improperly discredit Todd's subjective allegations on which Graff, Dr. Johnson, and Dr. Karayusuf relied. Although "an ALJ may not discount a claimant's allegations . . . solely because the objective medical evidence does not fully support them . . . the ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole." Goff, 421 F.3d at 792 (internal quotation marks and citations omitted).

The ALJ first discussed Todd's limitations and noted his alleged impairments were not consistent with objective medical evidence. In relation to Todd's alleged emphysema and tremors, objective evidence demonstrated Todd had few respiratory exacerbations, his pulmonary function tests documented only mild obstruction, a chest x-ray was normal, and although medical professionals observed his tremors, they resulted from an unknown etiology, either alcohol or anxiety, and Todd never had them evaluated or treated by a medical or a psychological source. Further, as previously discussed, Todd failed to follow the prescribed treatment for his alleged affective or anxiety disorder. See Goff, 421 F.3d at 793 (finding a failure to take pain medication is relevant to a credibility determination). Todd additionally failed to remain sober. The notes provided by Graff and Dr. Johnson also failed to describe any objective medical testing conducted on Todd for these limitations. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (providing substantial weight to a treating physician's opinion only if it is supported by medically acceptable clinical or diagnostic data).

Second, the ALJ examined Todd's activity level in assessing his ability to perform any gainful activity. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). The ALJ found Todd could perform a number

of activities of daily living on a sustained useful routine basis such as caring for his personal hygiene, preparing meals, washing dishes, mowing the lawn, shoveling snow, grocery shopping, using public transportation, handling finances, watching television, playing games, and performing maintenance work at his apartment building for a reduction in rent. Additionally, Todd enjoyed riding his bicycle and regularly visited the library. These inconsistencies between Todd's subjective complaints and his activities diminish his credibility. See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain).

Lastly, the ALJ considered Todd's work history in conjunction with an assessment of his credibility. The ALJ found Todd had a sporadic work history for multiple employers, had not made significant attempts to return to work, and had not sought or received any vocational or rehabilitative training to assist with his employment. Consequently, the ALJ determined Todd did not demonstrate a strong motivation to return to the workplace.

Considering the ALJ's findings regarding other objective medical evidence, a lack of medical evidence, and Todd's activity level, work history, and lack of motivation, it is apparent the ALJ sufficiently considered Todd's complaints but discredited them for good cause because they were inconsistent with the evidence as a whole. Accordingly, the ALJ provided valid reasons for discounting Todd's subjective complaints. See Wildman, 596 F.3d at 968-69 ("[S]ubstantial evidence in the record as a whole supports the ALJ's determinations that Wildman had a sporadic work history before her disability onset date and that Wildman was noncompliant with her doctor's instructions to take her medications, follow her diet, and totally abstain from drugs and alcohol. These are valid reasons for discrediting Wildman's subjective complaints.").

Given the ALJ's careful identification of inconsistencies and Todd's failure to follow the prescribed course of treatment, we find the ALJ properly denied giving controlling weight to the opinions of Graff, Dr. Johnson, and Dr. Karayusuf. We also find, after considering the evidence in the record as a whole without giving controlling weight to those medical professionals, the ALJ's decision to deny Todd benefits is supported by substantial evidence in the record as a whole for the same reasons and more. The vocational expert's answers to the hypotheticals, which Ronald does not dispute, indicate there is a significant number of jobs available to a person in Todd's condition. Accordingly, there is substantial evidence to support the denial of benefits.

III

For the foregoing reasons, we affirm the district court's affirmance of the denial of benefits.

_____

-10-