# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1240

_____

Bryce Mabry

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: September 22, 2015
Filed: March 3, 2016

_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Bryce Mabry appeals the magistrate judge's[1] order affirming the denial of his applications for disability insurance benefits (DIB) and supplemental security income

---

[1]The Honorable Jerome T. Kearney, United States Magistrate Judge for the United States District Court for the Eastern District of Arkansas, to whom the case was submitted by consent of the parties under 28 U.S.C. § 636(c).

(SSI), after a hearing before an administrative law judge (ALJ).  On appeal, Mabry argues that the ALJ's determination that his mental impairments only limit him to unskilled work is not supported by substantial evidence on the record as a whole. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  Background

On March 22, 2011, Mabry filed applications for both DIB and SSI, claiming he was unable to work due to a combination of impairments including paranoid schizophrenia, depression, anxiety with panic attacks, and morbid obesity.  Mabry graduated from high school and attended one semester of college, but dropped out due to depression and anxiety.  He has worked as a cook in a bowling alley, a roofer/helper, a farm worker, and a preparation cook.  He last worked in March 2011.

As support for his claim, Mabry presented extensive medical evidence showing that he was treated on a continuing basis from 2004 through 2012 at Mid-South Health Systems (Mid-South), the local mental health facility.  The evidence demonstrated hospitalizations for psychotic or suicidal behavior in 2004, 2006 and 2007, treatment with several different anti-psychotic, anti-depressant, and anti-anxiety medications, and ongoing individual therapy. Medical reports indicated Mabry was making progress but on April 16, 2011, he went to the emergency room with complaints of anxiety, depression, and suicidal thoughts.  He was diagnosed with suicidal thoughts, given anti-depression, anti-anxiety, and anti-psychotic medications, and released.  Although the notes from Mabry's next two individual therapy sessions noted increased depression and suicidal ideation, by May 12, 2011, the notes showed continued progress, albeit at times "slight," and Mabry reported his medications seemed to help.  Notes from December 15, 2011, indicated that he discussed job-seeking strategies with his therapist, and his medical records from 2012 showed he was doing better overall and reported no hallucinations, delusions, or suicidal ideation.

On June 6, 2011, at the request of the Social Security Administration, Mabry underwent a consultative examination with Dr. Samuel Hester. Dr. Hester diagnosed Mabry with schizoaffective disorder and morbid obesity. Dr. Hester stated that Mabry "is not likely to be able to cope with the typical mental demands of work-like tasks." Dr. Hester further concluded, however, that Mabry had the capacity to complete tasks within an acceptable time frame if he could motivate himself to attend work and that his psychosis appeared to be controlled with medication.

On June 9, 2011, Dr. Kay Gale, a state psychiatric consultant, reviewed Mabry's medical records and concluded that Mabry could perform simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to work performed and supervision is simple, direct, and concrete. This assessment was affirmed on June 21, 2011, by Dr. Paula Lynch, another state agency medical consultant, who also reviewed Mabry's medical records.

The Commissioner denied Mabry's claims initially and upon reconsideration. After his claims were denied, the ALJ held a disability determination hearing on August 22, 2012, at which Mabry and a vocational expert (VE) testified.[2] Mabry was represented by counsel at the hearing. In response to a hypothetical from the ALJ, the VE testified that a person with Mabry's limitations could perform Mabry's past unskilled work as a farm worker and prep cook. In addition, the VE testified that a person with Mabry's limitations could perform other unskilled work such as an office cleaner and office helper. The ALJ denied Mabry's disability application.

---

[2]At the hearing, Mabry amended his onset date for disability to January 15, 2010.

## II. Discussion

We review de novo a district court's denial of social security benefits. Johnson v. Colvin, 788 F.3d 870, 872 (8th Cir. 2015). In so doing, "'[w]e do not reweigh the evidence presented to the ALJ,' and we defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Id. (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. (quotation omitted). "We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome." Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).

The ALJ evaluated Mabry's claim according to the five-step sequential evaluation process established by the Social Security Administration. See 20 C.F.R. §§ 404.1520, 416.920; see also Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006). At the first step, the ALJ found that Mabry had not engaged in substantial meaningful employment since January 15, 2010. At step two, the ALJ found that Mabry had severe impairments of schizoaffective disorder, depression, and panic attacks, but at step three found that these medical impairments did not meet the criteria in the Listings of Impairments. See 20 C.F.R. Pt. 404, Subpt. P, App. I. The ALJ determined at step four that Mabry had the Residual Functional Capacity (RFC)[3] to "perform a full range of work at all exertional levels with the following nonexertional limitations: [Mabry] is limited to simple, routine, repetitive tasks where interpersonal contact is only incidental to the work performed and supervision is simple, direct, and concrete." Mabry asserts that the ALJ's RFC determination at step

---

[3]An RFC is the most a claimant can do despite his or her limitations. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

four, which the ALJ incorporated into his hypothetical question to the VE at step five, is not supported by substantial evidence in the record.

Mabry asserts the ALJ's RFC assessment does not adequately account for all the limitations he suffers due to the combination of paranoid schizophrenia, panic attacks, and chronic depression. "The RFC must (1) give appropriate consideration to all of [the claimant's] impairments, and (2) be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting." Partee v. Astrue, 638 F.3d 860, 865 (8th Cir. 2011) (internal quotations omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). An ALJ may also consider the claimant's subjective statements about his capabilities. Partee, 638 F.3d at 865. The RFC determination "is ultimately an administrative determination reserved to the Commissioner." Cox, 495 F.3d at 619–20 (citing 20 C.F.R. §§ 416.927(e)(2), 416.946). The claimant has the burden to establish his RFC. Pearsall, 274 F.3d at 1217.

Mabry argues that the ALJ disregarded his voluminous Mid-South medical records, which include hospitalizations for psychotic or suicidal behavior in 2004, 2006, and 2007.[4] He asserts that the medical record he submitted shows he has been

---

[4]The Commissioner urges us to disregard Mabry's medical evidence dated before January 15, 2010, arguing that this evidence cannot be used to show disability during the relevant time period of January 15, 2010, through September 20, 2012. Mabry filed a prior claim, which was denied without further appeal on January 14, 2010. While evidence submitted and considered by an ALJ in a prior proceeding cannot be considered as new evidence in this proceeding, it can be considered as "background for new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding." Hillier v. Soc. Sec. Admin., 486 F.3d 359, 365 (8th Cir. 2007) (quotation omitted). Moreover, medical evidence dated before the ALJ's prior decision but not considered in the prior proceeding constitutes

treated with several different anti-psychotic, anti-depression, and anti-anxiety medications, with varying results, and has continued to have suicidal thoughts and panic attacks.[5] Mabry contends that the only medical evidence in the record supporting the ALJ's RFC assessment came from non-examining state agency doctors.

Our review shows that the ALJ did not rely solely on the opinions of the state agency doctors and sufficiently considered the medical records provided by Mabry in assessing Mabry's RFC. The ALJ recognized that Mabry has significant mental impairments, finding them severe at step two of the analysis. While Mabry's medical records show that Mabry's mental health has fluctuated—especially in the years between 2004 and 2010—the treatment notes from February 2010 through June 2012 reveal that Mabry's mental health had stabilized to a certain degree and he was making progress. During 2012, he reported no delusions, hallucinations, or suicidal ideation. The state agency physicians' opinions were consistent with the other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating Mabry's RFC. See Stormo v. Barnhart, 377 F.3d 801, 807–08 (8th Cir.

---

new evidence and can be considered. Id. at 364–65. The Commissioner has not identified what parts of Mabry's medical evidence were considered in a prior proceeding, nor has she convinced us that the earlier evidence is not relevant as background as to Mabry's current mental impairments. As a result, we decline to limit our consideration of the evidence in the record.

[5]Mabry contends that the ALJ erred by considering the lack of work-related restrictions placed on him by his medical providers because none of them had been asked for their opinion. "A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting an ALJ's [RFC determination] when the doctor was not asked to express an opinion on the matter and did not do so." Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001). Our review of the record shows that, although the ALJ mentioned that Mabry's treating physicians had not placed restrictions on him, the RFC assessment was not based on this factor alone.

-6-

2004) (the ALJ properly used evidence from state agency doctors in supporting the finding that the claimant's mental impairments were not disabling).

Mabry also contends that the ALJ failed to consider Dr. Hester's opinion that Mabry would be unlikely to be able to cope with the typical mental demands of basic work-like tasks. The ALJ is not required to accept every opinion given by a consultative examiner, however, but must weigh all the evidence in the record. See Brachtel v. Apfel, 132 F.3d 417, 420 (8th Cir. 1997). The interpretation of physicians' findings is a factual matter left to the ALJ's authority. See Clay v. Barnhart, 417 F.3d 922, 930 (8th Cir. 2005). In this case, most of Dr. Hester's opinions and findings are consistent with the ALJ's RFC assessment. Dr. Hester observed that Mabry was cooperative, alert, and oriented. Dr. Hester noted that Mabry showed no delusions or hallucinations and could communicate in a socially adequate, intelligible and effective manner. Dr. Hester was also of the opinion that Mabry could sustain persistence and concentration and finish tasks in an acceptable time frame if properly motivated. The ALJ did consider Dr. Hester's statement that Mabry likely would not be able to cope with the typical mental demands of basic work-like tasks, but simply concluded it was inconsistent with the rest of the doctor's own report. See Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012) (ALJ may discount a physician's opinion if the opinion is internally inconsistent).

The ALJ also considered Mabry's Global Assessment of Functioning (GAF)[6] scores, most of which were in the mid-50's in 2010 through 2012, but found the

[6]The GAF is a numeric scale used to rate social, occupational, and psychological functioning "on a hypothetical continuum of mental-health illness." Pate-Fires v. Astrue, 564 F.3d 935, 937 n.1 (8th Cir. 2009) (quoting Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Am. Psychiatric Ass'n 1994) (DSM-IV)). The scale ranges from zero to one hundred. Id. We note that the most recent edition of the DSM discontinued use of the GAF scale. See Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. Am. Psychiatric Ass'n 2013).

scores were "not controlling." GAF scores may be relevant to a determination of disability based on mental impairments. See Pate-Fires, 564 F.3d at 944–45. But "an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010) (quotation omitted). In this case, the ALJ carefully considered the scores but found they conflicted with other objective medical evidence in the record, including the clinical observations of Mabry's treating physicians, who noted continued progress particularly in 2010 through 2012. In any event, Mabry's scores are consistent with the ALJ's finding that Mabry has moderate limitations in activities of daily living and maintaining social functioning, concentration, persistence, or pace. See Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010) (a history of GAF scores of between 52 and 60 was consistent with a finding of moderate limitations).

The ALJ also concluded that Mabry's symptoms were reasonably controlled by medication and treatment. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (quotation omitted). On the other hand, we recognize that "'[i]t is inherent in psychotic illnesses that periods of remission will occur,' and that such remission does not mean that the disability has ceased." Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir. 1996) (quoting Miller v. Heckler, 756 F.2d 679, 681 n.2 (8th Cir. 1985) (per curiam)). Because individuals with a mental illness may experience periods during which they are relatively symptom-free, their level of functioning can vary significantly over time. See 20 C.F.R. Pt. 404, Subpt P, App. 1, § 12.00(D). In addition, medications may have adverse side effects that may affect a person's ability to function in the work place. See 20 C.F.R. Pt. 404, Subpt P, App. 1, § 12.00(G). Here, however, the ALJ expressly considered the longitudinal evidence, and determined that it showed that Mabry's medications, when properly and consistently used, were "relatively effective in controlling [Mabry's] symptoms to the point he could do at least unskilled work activity." Mabry has not been hospitalized for a psychotic episode since 2004 or for suicidal thoughts since 2007, and his treatment

notes since 2010 indicate he has made progress in therapy with medication. The notes also indicate Mabry reported his anxiety was much more manageable with medication and he was pleased with his progress. Dr. Hester's report noted that medication controlled Mabry's psychosis. And Mabry himself testified at the administrative hearing that his medications worked well. The record in this case simply does not support a finding that Mabry's mental illness is particularly difficult to manage or susceptible to wide swings in the type or severity of symptoms.

The ALJ also viewed Mabry's history of holding low-earning jobs for varying lengths of time as an indication that he lacked motivation to return to work. Mabry contends instead that "any lack of motivation is a manifestation of his [mental] impairment." A poor history of employment may be evidence of a claimant's lack of motivation to work. Pearsall, 274 F.3d at 1218. But we recognize that a spotty work record may also reflect an inability to work on a consistent basis, which may support a finding of disability. See Gamber v. Bowen, 823 F.2d 242, 245 (8th Cir. 1987) (citing Miller v. Heckler, 747 F.2d 475, 478 (8th Cir. 1984)). Mabry last worked in March 2011, and, according to his medical records, was looking for a job in February 2012, which is after his alleged onset date. This evidence is in accord with Dr. Hester's opinion that Mabry had the ability to "complete tasks if he can motivate to attend work." In addition, the medical records showed progress in 2011 and 2012, further supporting the ALJ's conclusion that Mabry's work history was more likely due to a lack of motivation than a lack of ability. See Gowell v. Apfel, 242 F.3d 793, 798 (8th Cir. 2001) (no showing of deterioration in symptoms supported the ALJ's determination that claimant was not disabled).

We conclude that substantial evidence in the record supported the ALJ's RFC determination and that the ALJ's RFC determination included the necessary limitations to account for Mabry's mental impairments. Accordingly, we affirm the decision of the district court.

_____